IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLOSE TO MY HEART, INC., a Utah corporation, and CABIN CREEK, LLC, d.b.a. CTMH CO., a Utah limited liability company, and JRL Publications, LLC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ENTHUSIAST MEDIA LLC, a Delaware entity, a/k/a CREATING KEEPSAKES, and a/k/a WWW.CREATINGKEEPSAKES.COM,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:07-CV-50 TC |

This matter comes before the court on a motion for preliminary injunctive relief filed by Plaintiff Close To My Heart, Inc. ("CTMH").  CTMH seeks to enjoin Defendants ("CK Media") from continuing their alleged acts of infringement and misappropriation of its proprietary scrapbooking patterns and trade dress.  Because CTMH has failed to establish a likelihood of success on the merits of its claims against CK Media, and because the record does not support the conclusion that CTMH will suffer irreparable harm absent the issuance of an injunction, CTMH's motion is DENIED.

## BACKGROUND[1]

The scrapbook industry is a highly competitive multi-billion dollar industry with several companies selling the same types of products.  CTMH and CK Media are two of these companies.  Scrapbooking generally involves creating books, cards, and similar paper crafts using photographs, rubber stamps, colored papers, and accessories to memorialize personal events.

Since the mid-1980s, CTMH and its predecessor have been engaged in the creation and marketing of decorative rubber stamps, background and texture papers (since 1994), and other items for use in the crafts industry.  CTMH has also published, sold and distributed catalogs, idea books and other publications to showcase CTMH's methods, ideas and products.  CTMH's innovations include a 12" by 12" paper format that is a part of its proprietary page patterns.  These page patterns teach scrapbooking techniques.  CTMH proprietary patterns include Title Topper, Bottom Border, Sidebar, Front and Center, Quartet, Half and Half, Main Frame, Sampler, Treasure Pocket, and Triple Play.  CTMH sells publications that contain instructions for the proprietary patterns, including *I Love Remembering, Close To My Heart Idea Book, Reflections* and *Cherish.*  Also, CTMH has developed a training system called the *ABC Scrapbook Program*, which uses a collection of the proprietary patterns as part of the program for teaching page layout skills.  In 2003, CTMH changed the name of the *ABC Scrapbook Program* to *Reflections.*

CK Media is a competitor of CTMH.  CK Media and its predecessors have been selling scrapbooking magazines and special issue publications ("SIP") since 1996, including the

---

[1] All factual findings are based on the evidence received at the hearing held on February 14 and 15, 2007, and in the written submissions of the parties.  The court will repeat only those facts necessary to explain its decision.

magazines *Creating Keepsakes* and *Simple Scrapbooks*.  In 2003, CK Media produced an SIP of *Creating Keepsakes* called *Creative Sketches,* which included instructions for layouts on scrapbooking pages.  In 2005, CK Media produced another SIP called *Creative Sketches* Volume 2, which included instructions for layouts of scrapbooking pages including cutting dimensions.

*EasyPatterns for Scrapbooking* ("*EasyPatterns*") is another SIP of *Creating Keepsakes*. CK Media first introduced the concept of *EasyPatterns* in an article in the August 2006 issue of *Creating Keepsakes*.  *EasyPatterns* can be ordered from the Creating Keepsakes website, www.creatingkeepsakes.com, and is distributed through large booksellers such as Barnes & Noble, as well as small independent retail stores.  *EasyPatterns* was first available for pre-order on the Creating Keepsakes website in November 2006.  CK Media began shipping *EasyPatterns* on January 18, 2007, to the independent retailers and those individuals who had ordered *EasyPatterns* through the Creating Keepsakes website.  The on-sale date, or the date that the booksellers began selling *EasyPatterns*, was February 6, 2007.

CTMH maintains that CK Media infringed and misappropriated its scrapbooking proprietary page patterns and trade dress in CK Media's publication of *EasyPatterns.*  CTMH filed the present motion seeking preliminary injunctive relief to halt CTMH from publishing and distributing *EasyPatterns*.

In response, CK Media maintains that CTMH's broad claims of infringement are overreaching and that their scrapbooking ideas are unprotectable.  CK Media alleges that there are hundreds of companies selling the same types of scrapbooking products and that CTMH selected CK Media out of all the industry participants that instruct consumers on how to aesthetically arrange photographs, titles, text boxes, instructions, embellishments, and other items on scrapbook pages.  Further, CK Media maintains that CTMH's and CK Media's products

are substantially different and that CTMH has failed to show irreparable harm.

## STANDARD FOR INJUNCTIVE RELIEF

The Copyright Act authorizes a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a preliminary injunction, a party must establish that: (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury unless an injunction is issued; (3) its threatened injury outweighs any harm the proposed injunction may cause to the opposing party; and (4) an injunction, if issued, would not be adverse to the public interest. Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1283 (10th Cir. 1996). "It is well settled that a preliminary injunction is an extraordinary remedy, and that it should not be issued unless the movant's right to relief is 'clear and unequivocal.'" Heideman v. South Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003) (internal citations omitted).[2]

## ANALYSIS

CTMH is not entitled to injunctive relief because CTMH is unlikely to prevail on the merits of its claims and it has not established that irreparable harm will result if an injunction does not issue.

**I.      CTMH has failed to establish a substantial likelihood of success on the merits.**

**A.      Copyright Infringement**

Copyright law only protects the *original expressions* of ideas, not the ideas themselves; the concepts underlying expression, remain free for anyone's taking. See Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright, ("Nimmer") § 2.03[D]; Autoskill Inc. v. National

_____

[2] The court rejects CK Media's assertion that CTMH's request is a disfavored mandatory injunction, which is even more closely scrutinized.

Educational Support Systems, Inc., 994 F.2d 1476, 1491 (10th Cir. 1993) (stating that one of the

fundamentals of copyright law is that a copyright does not protect an idea, but only the

expression of the idea).   "The *sine qua non* of copyright is originality."  Feist Pubs., Inc. v. Rural

Tel. Serv. Co., 499 U.S.340, 345 (1991).

     A plaintiff must make out a prima facie case of copyright infringement.  See Autoskill

Inc., 994 F.2d at 1487.  To prevail on its copyright infringement claim, CTMH must establish

both: (1) that it possesses a valid copyright and (2) that CK Media copied protectable elements of

the copyrighted work.  Feist Pubs., Inc., 499 U.S. at 361; Gates Rubber Co. v. Bando Chem.

Indus., Ltd., 9 F.3d 823, 831 (10th Cir. 1993).  To show copying,[3] CTMH must show both access

to the copyrighted material and substantial similarities between the copyrighted material and the

alleged copied material.  Country Kids 'N City Slicks, Inc., 77 F.3d at 1284.  Here, the issue

turns on whether CK Media copied protectable elements of CTMH's scrapbook publications.

This examination involves two separate inquiries: (1) whether CK Media, as a factual matter,

---

[3] CTMH maintains that the U.S. Supreme Court's holding in Baker v. Sleden, 101 U.S. 99 (1879), makes a distinction between copying for explanation versus copying for use.  (Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp'n Mem.) at 4.)  According to Nimmer, the Court's holding in Mazer v. Stein, 347 U.S. 201 (1954), implies that the Baker v. Sleden distinction between copying for use and copying for explanation was dictum that will no longer be followed.  1 Nimmer § 2.18[D][1].  Nimmer states that:

> In dealing with works designed for a utilitarian function, as with all copyrighted works, the question of liability should turn simply on whether the defendant has copied copyrightable elements contained in the plaintiff's work, without regard to the manner in which the defendant uses or intends to use the copied material. Thus, even if the copied material is to be used for purposes of explanation, there should be no finding of infringement if all that was copied was the noncopyrightable idea.

Id.  The present Copyright Act properly codifies this more limited interpretation of Baker v. Selden by its exclusion of copyright protection for "methods of operation" and the like.  Id. (quoting 17 U.S.C. § 102(b)).

copied CTMH's works; and (2), whether, as a mixed issue of fact and law, any elements that were copied were protected. Gates Rubber Co., 9 F.3d at 832. The second inquiry requires a determination as to which elements of CTMH's works (e.g., layout, placement of photographs, titles, text boxes, instructions, concept of CTMH's scrapbooking materials) are protectable. Country Kids 'N City Slicks, Inc., 77 F.3d at 1284.

CK Media does not question the validity of CTMH's copyright registrations for works including *I Love Remembering...Life's Simple Joys*, *ABC Scrapbook Program: About Basic Composition*, *Reflections Scrapbook Program I (Basic Series)*, *Cherish*, and others. (See Pls.' Mem. in Supp. of Pls.'Mot. for a TRO and Prelim. Inj. ("Pls.' Mem.") Exs. 18-26.) Nor has CK Media contested the fact that CK Media had access to CTMH's copyrighted materials that CTMH has demonstrated. But "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." Feist Pubs., Inc., 499 U.S. at 348.

At the heart of this matter is whether CK Media copied protectable elements of CTMH's scrapbook publications. Copyright does not protect against the borrowing of abstract ideas contained in the copyrighted work. 4 Nimmer § 13.03[A][1]. Therefore, if the only similarity between plaintiff's and defendant's works is that of the abstract idea, there is an absence of *substantial* similarity and hence, no infringement results. Id. "Only by vigorously policing the line between idea and expression can we ensure both that artists receive due reward for their original creations and that proper latitude is granted other artists to make use of ideas that properly belong to us all." Todd v. Montana Silversmiths, Inc., 379 F. Supp.2d 1110, 1112 (D. Colo. 2005) (quoting Satava v. Lowry, 323 F.3d 805, 813 (9th Cir. 2003)). Even an item that possesses a valid copyright may contain both protectable and unprotectable types of expression. Id.

6

CK Media denies that its scrapbook page layouts in *EasyPatterns* are substantially similar to the protectable elements of CTMH's proprietary patterns.  To decide whether two works are substantially similar, the court must consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking materials of substance and value." Country Kids 'N City Slicks, 77 F.3d at 1288 (quoting Atari, Inc. v. North Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 614 (7th Cir. 1982)).  Determining whether there is substantial similarity in cases involving fact-based works is particularly difficult.

To make this determination, the court applies the Tenth Circuit's "abstraction-filtration-comparison" test.  See Country Kids 'N City Slicks, Inc., 77 F.3d at 1285, n.5 (quoting 3 Nimmer 13.03[E], at 13-96 to 13-97) (The successive filtration test "should be considered . . . across the gamut of copyright law")).

1. The Abstraction-Filtration-Comparison Analysis

The Tenth Circuit has described the abstraction-filtration-comparison test this way:

At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

Id. at 1284-85.

At CK Media's request, CTMH provided examples of CK Media's alleged infringement.  To the court, these examples showed that CTMH is asserting protection of the concept of scrapbook page layouts.  (Feb. 5, 2007 Letter attached as Ex.1 to Defs.' Opp'n Mem.)

For example, CTMH maintains that pages 32 and 72 of CK Media's *EasyPatterns* are derivative works of CTMH's *Reflections* pages 12 and 13 called "Title Topper."  (Id.)  Applying the abstraction-filtration-comparison test, the court has examined CTMH's scrapbook page

labeled "Title Topper" to separate the ideas (and basic utilitarian functions) from the particular expression of the work.

In examining "Title Topper," there is plainly an informational page instructing consumers on how to put together a scrapbook page—it has a title on the upper part of the page and instructions telling consumers how to attach pieces of paper over a 12" x 12" piece of paper.  It also has a "suggestion" to place photos of various sizes onto the paper.  These are ideas that are not protectable under copyright law.  When comparing CTMH's *Reflections* pages 12 and 13 to CK Media's pages 32 and 72, not only are the instructions different but the particular combination of colors and patterns associated with these pages differ.  The only substantial similarities present are the *ideas* that scrapbook pages have titles, borders, and instructions.  But there are several differences, including different titles and title placement, word choice, font choice, embellishments (such as printed vs. stickers), page sizes, photo sizes, orientation and placement of photos, embellishments and text, borders, and backgrounds (white vs. patterned).  These differences illustrate that the instructional scrapbook pages are just the basics and that they can be arranged in many ways.  Once the court filters out the nonprotectable ideas—that a scrapbook page has a title, border, instructions, and photo placement positions—then there are only different embellishments and no substantial similarities.

The other examples that CTMH gave are similar: while the idea or concepts are similar, the protectable expressions of CTMH's scrapbooks are not.

Accordingly, CTMH has not established a likelihood of success on its claim for copyright infringement because whatever substantial similarity there may be emerged from unprotected materials.

**B.**     **Trade Dress**

"Trade dress features are those comprising a product's look or image." Vornado

Air Circulation Sys., Inc. v. Duracraft Corp., 58 F.3d 1498, 1502 (10th Cir. 1995).  To prevail in

an action for trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),

CTMH must make two showings.  First, CTMH must establish that the combination of features

comprising its scrapbook publications has created an overall appearance that either: (a) is

inherently distinctive or (b) has acquired distinctiveness through secondary meaning.  Shelbyco

Inc. v. Western Trimming Corp., 1997 U.S. Dist. LEXIS 13542 at *7 (D. Utah 1997); Vornado

Air, 58 F.3d at 1502.  Second, CTMH must show that potential customers are likely to be

confused by the appearance of CK Media's *EasyPatterns* publication and believe that

*EasyPatterns* is associated with CTMH.  Shelbyco Inc., 1997 U.S. Dist. LEXIS 13542 at *7.

Even if the court were to determine that CTMH has made the required showing, CK Media may

still avoid liability by demonstrating that the design of CTMH's scrapbooking products is

functional.  Id.; Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 517 (10th Cir. 1987);

Villeroy & Boch Keramische Werke K.G. v. THC Sys. Inc., 999 F.2d 619, 620 (2d Cir. 1993).

A product is functional if it is "essential to the use or purpose of the product or if an adverse

effect on cost or quality would result if that configuration were not used."  Brunswick Corp., 832

F.2d at 517.

CTMH's burden is made more difficult because the trade dress it seeks to protect is not a

single design or the appearance of one sole product, but rather the overall look of several

scrapbooking pages.  CTMH must show that there is a consistent overall look found in all of its

proprietary papers and that this look is entitled to trade dress protection.  Shelbyco Inc., 1997

U.S. Dist. LEXIS 13542 at *9 (citing Walt Disney Co. v. Goodtimes Home Video Corp., 830 F.

9

Supp. 762, 766 (S.D.N.Y 1993)).

CTMH claims that its proprietary pages are entitled to trade dress protection because their look has acquired secondary meaning.  (Pls.' Mem. at 4-5.)  Trade dress acquires secondary meaning when "its primary significance in the minds of potential consumers is no longer as an indicator of something about the product itself but as an indicator of its source or brand." Vornado Air, 58 F.3d at 1502.  Whether CTMH's scrapbook pages have acquired secondary meaning depends on a number of factors including consumer testimony, consumer surveys, advertising expenditures, length and exclusivity of use, and competitors' attempts to copy. Shelbyco Inc., 1997 U.S. Dist. LEXIS 13542 at *13; Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 393 (2d Cir. 1995).  No single factor is determinative.  Shelbyco Inc., 1997 U.S. Dist. LEXIS 13542 at *13.

CTMH maintains that its unique combination of its end-product example, dimensions, proprietary patterns, cutting diagrams, list of supplies, and step-by-step instruction all on one page or on facing adjoining pages is its trade dress.  (Pls.' Mem. at 4.)  But because the court finds that CTMH's scrapbooking products are merely ideas and informational instructions on how to put together a scrapbook page, the products are functional and ideas that are not protectable.  See Brunswick Corp., 832 F.2d at 517.

The scrapbook page layouts and instructions in CTMH's purported trade dress are the same elements upon which CTMH relies for its infringement claim, and so the claims are intertwined and overlap.  Accordingly, the court finds that CTMH has not shown a likelihood of success on its claim of trade dress infringement.

10

**II.     CTMH has failed to establish that it will suffer irreparable harm absent the issuance of a preliminary injunction.[4]**

Harm is irreparable when it cannot be measured and is not compensable with monetary damages.  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1263 (10th Cir. 2004) (irreparable harm determinations consider factors such as "inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace . . . and lost opportunities to distribute unique products").  The injury must be "certain, great, actual and not theoretical."  Schrier v. Univ. of Colo., 427 F.3d 1253, 1267 (10th Cir. 2005) (internal citations omitted); see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1262 (10th Cir. 2004) (irreparable injury "must be both certain and great, and . . . must not be merely serious or substantial").

CTMH's claim of irreparable harm is undermined because it has delayed in pursuing a preliminary injunction.  See GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984).  CTMH maintains that they will suffer irreparable harm to their copyrights, their position in the market place, customer relations, their investment and their reputation.  Notably, CTMH admits that "[w]hile past works and other competitors in the market may have also infringed or continue to infringe CTMH copyrights, the present action relates to a new infringement that CTMH has only become aware of in recent days."  (Pls.' Reply in Supp. of Mot. for Prelim. Inj. at 16).  But CTMH itself admitted that there has been a pattern of CK Media's infringement dating back to January 2005.  According to CTMH, that is the time that Primedia (CK Media's predecessor) began selling a special issue of *Simple Scrapbooks* magazine entitled "*Scrapbook Shortcuts,*

---

[4] CTMH is entitled to a rebuttable presumption of irreparable harm only if they carry their substantial burden of showing a likelihood of success on the merits. Because CTMH has failed to meet that burden, and they are not entitled to a presumption of irreparable harm.

*using simple schemes*," that contained numerous page patterns which are "substantially similar to the Proprietary Patterns published in CTMH's *Published Instruction Manuals.*"  (Pls.' Mem. at xv; Decl. of Jeanette Lynton ¶ 52.)  Further, CTMH admitted that there are other companies "mimicking CTMH's Proprietary Company Property."  (Pls.' Mem. ¶ 44.)  Ms. Lynton testified that she didn't want to "make waves" by filing earlier claims of infringement against CK Media's predecessors and other competitors.

Not only did CTMH acknowledge a pattern of infringement dating back to January 2005, but on November 3, 2006, CTMH filed a suit against CK Media's predecessors—Primedia, Inc. and Enthusiast Media, LLC and Stacy Julian—alleging infringement of its copyrights and other claims.[5]  CTMH stated in its complaint that the defendants sold products that contained one or more page patterns that were substantially similar to those in CTMH's *Reflections* and *Originals* work:

> 46. In or about September 2004, defendants began selling booklets under the Simple Scrapbooks name entitled "Make a Christmas scrapbook," "Make a wedding scrapbook," "Make a baby scrapbook," and "Make a vacation scrapbook," (collectively the "Simple Scrapbooks Booklets") each of which contains one or more Page Patterns that are substantially similar to those included in CTMH's Reflections™ Work and/or CTMH's Originals™ Work.
>
> 47. In or about January 2005, defendants began selling a special issue of Simple Scrapbooks magazine entitled "Scrapbook Shortcuts, using simple schemes" which contains numerous Page Patterns that are substantially similar to the Page Patterns published in CTMH's Reflections™ Work and/or CTMH's Originals™ Work. (The magazine issue "Scrapbook Shortcuts, using simple schemes" and the Simple Scrapbooks Booklets are collectively referred to herein as the "Simple Scrapbooks Works").
>
> 48. Plaintiffs are informed and believe, and thereon allege, that Primedia and its agents and employees collected and/or prepared the page layouts or page patterns

---

[5] CTMH's November 3, 2006 suit was filed in this District, but none of the defendants have been served.  See Close To My Heart, Inc. v. Primedia, Inc., Case No. 2:06-cv-937 TS (D. Utah).

published in the Simple Scrapbooks Works. This content included page layouts or page patterns related to a program for teaching scrapbook layout and design techniques. (The page layouts or page patterns contained in the Simple Scrapbooks Works are hereinafter referred to as the "Simple Scrapbooks Page Patterns.") Many of the Simple Scrapbooks Page Patterns feature the same or substantially similar design elements, collection, arrangement, and positioning, as Page Patterns presented in CTMH's Reflections™ Work and/or CTMH's Originals™ Work.

(Compl. in <u>Close To My Heart, Inc. v. Primedia, Inc.</u>, Case No. 2:06-cv-937 TS (D. Utah), ¶ 46-48 (emphasis added).)

For these reasons, the court finds that CTMH has not established that it will suffer irreparable injury if an injunction is not granted.

**III.    The balancing of harms favors neither party.**

To be entitled to a preliminary injunction, "the movant has the burden of showing that the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction." <u>Heideman v. South Salt Lake City</u>, 348 F.3d 1182, 1190 (10th Cir. 2003).

It appears from the record that CK Media would suffer harm if the requested injunction is issued. CK Media maintains that if it were required to retrieve unsold copies of *EasyPatterns*, such retrieval will cost approximately $150,000 to $200,000 and harm their relationship with their distributors and booksellers. (Defs.' Opp'n Mem. at 24.) The issuance of an injunction would cause CK Media to suffer significant disruption and expense. But the court recognizes that CK Media knew of the possibility of harm when it distributed *EasyPatterns*. Accordingly, this factor does not favor either party.

**IV.    The public interest favors neither party.**

The public possesses a strong interest in protecting copyright laws and the interests of copyright holders. But it also has an interest in free competition in the marketplace, as well as an

interest in freedom from meritless litigation that ultimately results in higher costs to consumers.

Accordingly, this factor does not favor either party.

## ORDER

For the foregoing reasons, CTMH's Motion for Preliminary Injunction is DENIED.

DATED this 2nd day of March, 2007.

BY THE COURT

TENA CAMPBELL
Chief Judge

14